# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

NINA NEACE,

                **Plaintiff,**

-vs-                                    **Case No.  6:05-cv-1297-Orl-DAB**

COMMISSIONER OF SOCIAL
SECURITY,

                **Defendant.**

_____

## MEMORANDUM OPINION AND ORDER

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying her claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case.  Oral argument has not been requested.

For the reasons that follow, the decision of the Commissioner is **affirmed.**

### I. BACKGROUND

**A.	Procedural History**

Plaintiff filed for a period of disability and DIB benefits on August 20, 2001.  R. 74-76.  She alleged an onset of disability on August 1, 1999, due to cervical and lumbar spasms, motion sickness, right arm pain, headaches, and hearing and vision difficulties.  R. 74, 105.  Her application was denied

initially and upon reconsideration.  R. 8-10.  Plaintiff requested a hearing, which was held on

December 8, 2003, before Administrative Law Judge Franklin D. Holder (hereinafter referred to as

"ALJ").  R. 35-53.  In a decision dated January 13, 2004, the ALJ found Plaintiff not disabled as

defined under the Act through the date of his decision.  R. 17-25.  Plaintiff timely filed a Request for

Review of the ALJ's decision.  R. 295.  The Appeals Council denied Plaintiff's request on November

21, 2005.  R. 8-10.  Plaintiff filed this action for judicial review on September 7, 2005.  Doc. No. 1.

**B.**      **Medical History and Findings Summary**

Plaintiff's medical history is set forth in detail in the ALJ's decision.  By way of summary,

Plaintiff complained of back, neck/throat, and shoulder pain and headaches as well as chest pain and

shortness of breath, lower rib cage pain.  R. 42-46, 79.  Plaintiff was 41 years old at the time of the

ALJ's January 13, 2004 decision (R. 20, 74) and had a high school education, three years of college,

and past work experience as an office assistant to a medical doctor, sales associate, and radiology

technician.  R. 92, 106, 111.  Despite an onset date of August 1, 1999, Plaintiff testified at the hearing

that she worked part-time[1] between August 1999 and March 2000 at a Hallmark store, but had not

worked since March 2000, following a motor vehicle accident.  R. 23, 38-39.  She also testified that

she is able to walk for 15 minutes, stand for 5 to 15 minutes, sit for 15 minutes and lift 3-5 pounds;

she lives with and cooks for an elderly lady but, she testified, is not paid for her services.  R. 23,

44, 47.  Her daily activities include some household chores, watching the news, cooking, watering

flowers, doing laundry, and occasionally going out in the evening.  R. 24, 45, 46-47.

---

[1]Plaintiff indicated on SSA forms that she worked eight hours per day, four days per week, and lifted less than ten pounds.  R. 93.

After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered from degenerative arthritis of the cervical spine, protruding disc at C5-6, bulging disc at C6-7, herniated disc at L4-5 and post traumatic headaches, impairments, which were "severe" medically determinable impairments, but not impairments severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 22.   The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to lift 20-30 pounds, sit, stand or walk for up to six hours in an eight-hour workday. R. 25, Finding 7.   In making this determination, the ALJ found that Plaintiff's allegations regarding her limitations were not totally credible based on the lack of supportive evidence for the degree of pain or severity of functional limitations Plaintiff described, in that Plaintiff is taking no prescribed medication for pain, she works as a care giver despite the fact that she receives no salary for her services[2], uses a computer, receives no treatment for her diagnosed carpal tunnel syndrome, and her daily activities indicate a greater functional capacity than that to which she testified. R. 24; 25, Finding 5.   Based upon Plaintiff's RFC, the ALJ determined that she could perform her past relevant work as an office assistant to a medical doctor, which did not require the performance of work-related activities precluded by her RFC.   R. 25, Finding 8.   Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision.   R. 25, Finding 10.

Medical records submitted to the Appeals Council include treatment notes from Appalachian Regional Healthcare in May 2005 that indicate Plaintiff was admitted by court order following an substance abuse problem, smoking marijuana two to four times a day.   R. 368.   She previously

---

[2]Medical records indicate Plaintiff reported working part-time as a "housekeeper."  R. 322.

admitted in June 2004 to first having tried marijuana at sixteen years old and "continued occasional use of this drug for a couple of years." R. 330-31.

In this appeal, Plaintiff asserts a single point of error. She argues that the ALJ erred by finding she had the RFC to perform her past relevant work contrary to treating doctors' statements. For the reasons that follow, the decision of the Commissioner is **AFFIRMED**.

## II. STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d

835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

> ### A.     RFC and the treating physicians' opinions.

Plaintiff claims that the ALJ should not have found her able to lift over twenty pounds when her treating physician and other reviewing and consulting physicians assigned lower lifting limitations, which should have precluded the ALJ from finding she was capable of performing her past relevant work.  As the Commissioner appropriately explains, the ALJ specifically stated in the decision that Plaintiff's work as an office assistant to a medical doctor as performed by Plaintiff between 1995 and 1997, which required no lifting over 20-30 pounds.  *See* R. 24.  According to Plaintiff's hearing testimony, she worked as a personal assistant for Treatment Systems[3] doing bids, errands, driving a car, and helping with bookkeeping, which did not require lifting and carrying like her radiology positions, but she frequently lifted twenty-five pounds.  R. 40-41, 94.  She also had worked at various doctors offices and, in addition to radiology work, which required lifting fifty to sixty pounds, she had experience in patient care, insurance billing, office work, and "just about anything that they needed" her to do.  R. 39-40.  The ALJ's determination that Plaintiff had past relevant work as an office assistant that did not require lifting over twenty to thirty pounds is supported by substantial evidence.

---

[3]It appears that the ALJ interpreted Plaintiff's experience at "Treatment Systems" to be at a medical office because Plaintiff was not clear at the hearing about the nature of the work to distinguish it from her other medical experience.  Based on a careful reading of written submissions on SSA forms, it appears "Treatment Systems" may be a plumbing company where Plaintiff wrote that she worked from "5/93 to 7/96."  R. 106.  Regardless, Plaintiff listed past relevant work was as an "assistant to physician" (R. 99) and she testified to many medical office skills, particularly billing, maintenance of office, communication skills, in addition to radiology (which required lifting of roughly fifty pounds) and in a variety of settings, including hospital chiropractic, family, home, orthopedic and rheumatology.  R. 99.  Plaintiff also testified specifically that there was "not much" lifting in her personal assistant position at "Treatment Systems," it was mostly driving.  R. 40-41.

The remaining issue then is whether the ALJ should have rejected the opinion of the treating physician that Plaintiff could not lift over twenty pounds.  Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof.  *Id.*  Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  *See Lewis*, 125 F.3d at 1440; *Edwards*, 937 F.2d at 583; 20 C.F.R. §§ 404.1527(d), 416.927(d).

If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

Plaintiff argues that the ALJ did not provide valid reasons for discrediting Dr. Benezette's opinions, although they were supported by cervical and lumbar MRIs that revealed herniations and physical examinations that revealed decreased range of motion and muscle spasms. Plaintiff contends that Dr. Benezette's opinions are supported by the other medical evidence, particularly on the issue of the amount of weight Plaintiff could lift.  Plaintiff points to the June 30, 2002 records of Plaintiff's treating physician, Dr. Benezette, who opined that Plaintiff could only lift up to twenty pounds. R. 257-58.  Dr. Benezette also found that Plaintiff was able to lift twenty pounds, sit for ten minutes at

a time, and one hour in an eight hour day, stand for 20 minutes at a time and 2 hours in an 8 hour day and walk for 20 minutes at a time and 1 hour in an 8 hour day. R. 257-58.  Plaintiff also cites in support the opinion of Dr. Huster, who evaluated Plaintiff on October 16, 2003, and concluded that Plaintiff could perform light work, which by definition would entail lifting ten pounds frequently and twenty pounds occasionally (R. 265); and the opinion of the non-examining physician that Plaintiff could not lift more than 20 pounds. R. 160.

The Commissioner contends that Dr. Benezette's opinion that Plaintiff could lift and carry 20 pounds occasionally is consistent with the ALJ's RFC finding. Although Dr. Benezette assessed additional limitations on standing, walking, and sitting that would preclude Plaintiff from the performance of light work, the Commissioner contends that the ALJ correctly found there is no support for finding these limitations in Dr. Benezette's treatment records (R. 23) or the other evidence of record.

During the period April 5, 2000[4] to November 16, 2001, physical examinations by Dr. Benezette revealed that Plaintiff had mild to moderate restriction of motion in her neck, back, and upper extremities, with mild spasm and tenderness in the paraspinous muscles of the lower cervical and upper thoracic spine. R. 167-78, 183-85, 187, 191-93.  Generally during this time period, strength testing was 5/5 in the upper and lower extremities, reflexes were 2/4 in the upper and lower extremities; Plaintiff had a normal gait and station, and no muscle atrophy.  R. 167-78, 183-85, 187, 191-93.  A nerve conduction study and an EMG of the right upper and lower extremity dated April 18, 2000 were within normal range. R. 190.  A May 3, 2000 MRI of the cervical spine showed

---

[4]Plaintiff testified that she stopped working at the Hallmark store after her March 2000 accident, however, she told Dr. Benezette that she was working, although Dr. Benezette took her off work until the following month's follow up visit.  R. 191-93.

subligamentous disc herniation at C5-C6; minor bulging of the C6-C7 disc; and reversal of the normal lordotic curvature suggestive of muscle spasm. R. 188. An April 2000 MRI of the lumbar spine showed localized herniation of disc material in the right lateral recess at L4-5. R. 189.

In a report dated August 31, 2001, Dr. Benezette assessed Plaintiff with an 18 percent permanent impairment and opined that Plaintiff had achieved maximum medical improvement was permanently "totally" disabled as a result of injuries from the March 11, 2000 car accident. R. 169. Dr. Benezette's opinion is not consistent with the supporting statements in that same report which show on physical examination Plaintiff had mild to moderate restriction of motion of the cervical spine in all planes, and mild to moderate spasm and tenderness in the paraspinous muscles of the cervical and upper thoracic spine. R. 169. By November 2001, Plaintiff was experiencing fewer mood swings and depression from a less stressful home environment and her medications. R. 167. She reported performing light stretching and range of motion on a daily basis and was being more active, going out in public, and suffering fewer headaches. R. 167-68.

Plaintiff returned to Dr. Benezette from February 2002 to November 2002, when she continued to complain of mild to moderate restriction of motion and mild to moderate spasm and tenderness. R. 254-56, 260-63. Dr. Benezette completed a form dated June 30, 2002, opining that Plaintiff was able to lift twenty pounds occasionally, walk for twenty minutes at a time and sit for 10 minutes at a time, both for one hour in an eight hour workday, stand for twenty minutes at a time and two hours in an eight hour workday, with certain environmental restrictions. R. 257-58. None of Dr. Benezette's records, from 2000 through 2002, indicate "total disability" or the restrictive limitations on Plaintiff's ability to lift, stand, walk, and sit that were assessed by Dr. Benezette. Plaintiff's

headaches and spasm coincided with having more stress in her life secondary to situational problems in the family.  R. 263.

Even the additional evidence of Plaintiff's back problems raised at the hearing by her counsel does not support Dr. Benezette's limitations or Plaintiff's "total disability."  At the hearing, Plaintiff's counsel offered the report of Dr. Harr as supporting Plaintiff's claim of severe orthopedic problems. R. 52.  During the physical exam on October 28, 2003, Dr. Marc E. Harr observed that Plaintiff appeared to be quite confrontational, hostile in demeanor, and was not fully cooperative.  R. 274.  Dr. Harr reported that Plaintiff appeared to have some disc disease, however, it was "with significant functional overlay" or a psychological condition,[5] and she demonstrated no evidence of permanent limitations that could be directly related to the car accident in 2000.  R. 269-70.  Dr. Harr noted that Plaintiff was able to arise from a chair and get on and off the examining table without assistance, was observed  to do a full sit up when getting on and off the examining table and when performing a slow supine maneuver, had a normal gait, and did not require an assistive device.  R. 273-74.  Dr. Harr reviewed Plaintiff's MRI's and opined that she had a bulging disc but minimal extradural impression at C5-6 and C6-7, and mild loss of signal strength of the disc at the L4-5 level with the disc spaces satisfactorily preserved.  R. 271-72; *see also* 340 (minimal degenerative disease as of January 25, 2005 submitted to Appeals Council).

As to the "functional overlay," Dr. Harr noted that Plaintiff would not permit range of motion of  the  cervical  spine  in  any  direction  beyond  a  few  degrees  which  was  inconsistent  and

---

[5]"Functional overlay" is used by medical doctors in the same sense as "hystronic" or "neurotic" to indicate there is a psychological element to a patient's physical ailments. *See* Lechnyr & Holmes, "The Practitioner's Guide to "Functional Overlay" in Illness & Pain: Are You Sure There Isn't An Underlying Psychological Problem?" located at: http://www.painsociety.com/articletemplate.cfm?id=11; *see also* The Glossary of Mental Health Terms, at http://www.health.qld.gov.au/mental_hlth/glossary/glossary_terms.asp#F (defining "functional overlay" as "a psychological condition which has caused or aggravated the physical symptoms").

nonphysiologic based on the observed findings. R. 273. Plaintiff was profusely tender with light palpation of the soft tissues and subcutaneous layer only, but there was no palpable deformity or paraspinal muscle spasm, and Plaintiff did not appear to respond with pain during compression of the cervical spine. R. 273. Dr. Harr further noted that motor strength testing in both the upper and lower extremities revealed sudden give way-type sensation which made a practical motor strength evaluation impossible; the give way-type sensations occurred in multiple areas and did not follow any particular nerve root or peripheral nerve root. R. 272-73. Sensory testing also revealed inconsistent findings of a nonphysiologic nature, and, again, there was no evidence of atrophy in either upper or lower extremities. R. 272-73. The thoracolumbosacral spine revealed a hint of some scoliosis in the low

back area, but no other deformities; however, range of motion of the thoracolumbosacral spine was nonphysiologic, resisted in all directions, and inconsistent with the observed findings when Plaintiff was getting on and off the examining table. R. 272-73. In direct contrast to Dr. Benezette's opinion, Dr. Harr opined that there was no evidence of partial permanent impairment of the body as a whole as a direct result of the March 2000 accident[6] and, although there was some degenerative arthritis present, there was "strong functional overlay of a nonorganic nature." R. 270.

The only other medical reports of evidence are those of two consultative examinations. The October 25, 2001 consultative examination by Dr. Jack E. Pulwers revealed that Plaintiff had moderate cervical and thoracolumbar paraspinal tenderness and pain with range of motion of the right shoulder. R. 141. However, there was full range of motion of the upper and lower extremities; gait was normal, grip strengths were 5/5 bilaterally, and fine manipulation was within normal limits. R.

---

[6]Plaintiff reported to Dr. Harr that she was seat-belted in a mid-size vehicle, hit from behind, and that the airbags did not deploy. R. 276. The car was driveable and she chose not to have it fixed. R. 276.

141.  A second consultative orthopaedic examination by Dr. Richard Huster on October 16, 2003 revealed that passively Plaintiff voluntarily limited motion in the cervical spine and there was minimal tenderness over the thoracic spine.  R. 265.  There was voluntary limitation of forward flexion of the lumbar spine, but flip test was negative as well as straight leg test, and there was no motor weakness or sensory deficit in either upper or lower extremities.  R. 265.  X-rays of the cervical spine showed minimal disc space narrowing, and x-rays of the thoracic and lumbar spines showed minimal degenerative changes consistent with Plaintiff's age.  R. 265.  Dr. Huster noted that Plaintiff came in wanting to be claimed totally disabled, but he concluded that orthopedically, Plaintiff was capable of light duty.  R. 265.  State agency physicians reviewed the evidence and opined on November 13, 2001 and February 26, 2002 that Plaintiff had the RFC for a full range of light work.  R. 159-66, 194-201. Thus, it is clear that the medical evidence did not support the RFC opinions of Dr. Benezette. Accordingly, good cause existed for the ALJ's failure to credit her opinion.

### CONCLUSION

The record in this case shows that Plaintiff's health has been affected to some degree by injuries sustained in motor vehicle accidents.  The ALJ appropriately considered these circumstances and analyzed them in relation to the exacting disability standard under the Social Security Act.  For the reasons set forth above, the ALJ's decision is consistent with the requirements of law and is supported by substantial evidence.  Accordingly, the Court **AFFIRMS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g).  The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida on January 16, 2007.

*David A. Baker*
_____
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record